IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| APRYLL MARIE HAIRSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:20CV228 |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Apryll Marie Hairston ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on July 27, 2016, alleging a disability onset date of July 2, 2016. (Tr. at 12, 209-19.)[2] Her application was denied initially (Tr. at 69-

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue the suit by reason of the last sentence of section 205(g) of the Social Security Act § 405(g).
[2] Transcript citations refer to the Sealed Administrative Record [Doc. #12].

83, 102-05) and upon reconsideration (Tr. at 84-101, 109-13). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 116.) On March 26, 2019, Plaintiff, along with her attorney, attended the subsequent hearing, during which an impartial vocational expert testified. (Tr. at 12.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 22-23), and, on February 11, 2020, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

## II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

Case 1:20-cv-00228-TDS-JEP   Document 21   Filed 08/24/21   Page 2 of 15

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her application date of July 26, 2016. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> back disorder, bi-polar disorder, HIV positive, morbid obesity, cannabis use disorder, alcohol use disorder, and anxiety disorder[.]

(Tr. at 14.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 14-15.) Therefore, the ALJ assessed Plaintiff's RFC and determined that, between the application date and the date of the

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

administrative decision, Plaintiff was able to perform light work with the following, additional limitations:

> [She] was able to understand, recall and carry out simple, routine tasks involving no more than simple, short instructions and simple work-related decisions, with few workplace changes, and no work at a fixed production rate or pace. [Plaintiff] was able to sustain concentration and attention for two hours at a time. [She] would be unable to interact with the general public in order to complete work tasks. [She] would be able to occasionally interact with co-workers and supervisors. [Plaintiff] should have no requirements to read instructions, write reports or perform math calculations.

(Tr. at 15-16.) At step four of the sequential analysis, the ALJ found that Plaintiff had no past relevant work. (Tr. at 21.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy. (Tr. at 21-22.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 22-23.)

Plaintiff now raises two challenges to the ALJ's decision. Specifically, Plaintiff contends that the ALJ (1) failed to resolve apparent conflicts between the Dictionary of Occupational Titles ("DOT") and the vocational expert's testimony, and (2) failed to explain the effects of agoraphobia on Plaintiff's mental residual functional capacity. (Pl.'s Br. [Doc. #17] at 2.)

A. DOT Conflict

As set out above, the ALJ found, in pertinent part, that Plaintiff "was able to understand, recall and carry out simple, routine tasks involving no more than <u>simple, short instructions</u> and simple work-related decisions" and "should have <u>no requirements to read instructions, write reports or perform math calculations</u>." (Tr. at 15-16 (emphasis added).)

6

The ALJ then asked a vocational expert ("VE") to identify jobs that could be performed by a hypothetical individual with such mental restrictions. (Tr. at 63-64.) The expert testified that such an individual could perform light, unskilled jobs such as photocopying machine operator (DOT 207.685-014, 1991 WL 671745), remnant sorter (DOT 789.687-146, 1991 WL 681286), and housekeeper/cleaner (DOT 323.687-014, 1991 WL 672783). (Tr. at 64.) Ultimately, the ALJ relied on the VE's testimony at step five of the sequential analysis to find Plaintiff capable of performing the cited jobs. (Tr. at 22.) However, Plaintiff now argues that all of the jobs identified at step five, as defined in the DOT, conflict with the mental limitations set out in her RFC.

The Fourth Circuit Court of Appeals has recognized that an ALJ has an affirmative "duty to make an independent identification of apparent conflicts" between VE testimony and the provisions of the DOT, regardless of whether a conflict is identified by the VE. Pearson v. Colvin, 810 F.3d 204, 208-09, 210 (4th Cir. 2015). In Pearson, because of this apparent conflict between the VE's testimony and the DOT, remand was required so that the ALJ could elicit a reasonable explanation from the expert before relying on the expert's testimony. Id. at 208-209, 211. As explained by the Fourth Circuit in Pearson with regard to the limitation on reaching at issue in that case:

> Deciding that the vocational expert's testimony apparently conflicts with the *Dictionary* here does not mean that an ALJ must find Pearson, or any other claimant with this limitation, unable to perform these jobs. Rather, it simply means that the ALJ and the expert should address exactly what form of reaching the stated occupations require and whether the claimant can fulfill those requirements. As the Seventh Circuit put it, "this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help." Prochaska, 454 F.3d at 736 (remanding the case for the ALJ to determine whether the vocational expert's testimony conflicted with the *Dictionary* because "the ALJ asked the expert for work that could be done by someone who could only

7

> 'occasionally reach above shoulder level' while a cashier's requirements, under the [*Dictionary*], include 'reaching' frequently").
>
> Directly addressing this conflict is important because even if some motel cleaners, cashiers, and bench press operators need not frequently reach overhead with both arms, the *number* of positions in the national economy without this requirement matters. An ALJ can only find a claimant not disabled at step five of the analysis if the Commissioner proves that the claimant can perform other work that "exist[s] in significant numbers in the national economy." 20 C.F.R. § 404.1560(c). So it is not enough that some positions exist in which the worker need not frequently reach overhead with both arms. The vocational expert must testify to how many of these positions do not require frequent bilateral overhead reaching. Likely at least some have this requirement. If there are a sufficient number of these positions that do not require frequent bilateral overhead reaching, the ALJ can properly find Pearson not disabled. If too many do have this requirement, the ALJ will necessarily find that Pearson cannot do work that exists in significant numbers in the national economy.

Id. at 211. In 2019, in Thomas v. Berryhill, the Fourth Circuit applied the principles articulated in Pearson as they related to the DOT's Reasoning Development scale. See Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir. 2019), as amended (Feb. 22, 2019). That scale has six levels—Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability. See DOT, App. C, 1991 WL 688702. The DOT assigns a Reasoning Development

Level to each occupation identified therein.[5] In Thomas, the vocational expert identified three jobs, all with a Reasoning Level of 2, "requir[ing] employees to 'carry out detailed but uninvolved written or oral instructions.' By comparison, Thomas's RFC limit[ed] her to jobs that involve only 'short, simple instructions.'" Thomas, 916 F.3d at 314 (internal citations omitted). The Fourth Circuit found

> that Thomas, being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions. This is not a categorical rule—some instructions, particularly if they are well-drafted, may be simultaneously short, simple, detailed, and uninvolved. Even so, the conflict between Thomas's limitation to short, simple instructions and the VE's testimony that Thomas could perform jobs that include detailed but uninvolved instructions is as apparent as the conflict we identified in Pearson. Since we held that an apparent conflict existed in Pearson, we are satisfied that one exists in this case, too. We remand so that the ALJ can resolve the conflict in accordance with the Administration's regulations.

Id. at 313-314. Consequently, in Thomas, the Fourth Circuit held that there was an apparent conflict between jobs requiring Level 2 reasoning and a limitation to "short, simple instructions." Id.

---

[5] The reasoning levels relevant to this case, 1 and 2, are defined as follows:

LEVEL 2

Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

LEVEL 1

Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

U.S. Dept. of Labor, DOT, App. C, available at 1991 WL 688702.

9

Case 1:20-cv-00228-TDS-JEP   Document 21   Filed 08/24/21   Page 9 of 15

Similarly, in the present case, the jobs of photocopying machine operator and remnant sorter both involve Reasoning Level 2, which under <u>Thomas</u> creates an apparent conflict with Plaintiff's RFC limiting her to "no more than simple, short instructions and simple work-related decisions." (Tr. at 16.) The ALJ failed to identify this apparent conflict, failed to elicit a reasonable explanation from the VE for the discrepancy, and failed to explain the resolution of that conflict. (Tr. at 65-66.)

Defendant does not contend otherwise, but nevertheless contends that this error was harmless because the ALJ was entitled to rely on Plaintiff's ability to perform the third job identified by the VE, that of housekeeper/cleaner, as substantial evidence that Plaintiff could perform other jobs available in the national economy. Notably, the job of housekeeper/cleaner only requires Level 1 reasoning. Therefore, it does not present an apparent conflict under the Fourth Circuit's decision in <u>Thomas</u>. However, Plaintiff contends that an additional apparent conflict exists between the reading limitations identified in her RFC and the job's required Language Development Level as defined in the DOT. The Language Development Level for a housekeeper/cleaner in the DOT is Level 1. As Plaintiff sets out in her brief, jobs "rated as level 1 language development require the ability to recognize the meaning of '2,500 (two-or three-syllable) words' and read[] at a rate of '95-120 words per minute.' Such jobs also require the ability to '[p]rint simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.'" (Pl.'s Br. at 5) (citing DOT, app.

Case 1:20-cv-00228-TDS-JEP   Document 21   Filed 08/24/21   Page 10 of 15

C, 1991 WL 688702).[6] Plaintiff argues that these requirements conflict with the RFC directive that she "should have no requirements to read instructions [or] write reports."

Notably, Level 1 is the lowest language development level available in the DOT's scale. However, as in Thomas and Pearson, the fact that there may be some subset of Language Development Level 1 positions that need not meet the DOT levels for reading and writing is not sufficient to resolve the apparent conflict; the ALJ must identify the issue and obtain VE testimony as to the number of positions that would not include this requirement and would be within Plaintiff's RFC. And, as set out in Pearson and Thomas, the ALJ must include an explanation resolving this conflict. In the briefing, Defendant contends that there is no apparent conflict because Plaintiff's RFC does not include a general reading restriction and instead only includes a limitation that there be no requirement to "read instructions." However, the ALJ did not include such an explanation, nor did the ALJ otherwise discuss or explain the reading limitation. In the ALJ's decision, the only discussion of Plaintiff's reading limitations are the ALJ's summary of Plaintiff's testimony indicating that "she does not read well" and "was in special education classes" (Tr. at 16), and the ALJ's summary of the third

---

[6] The relevant Language Development Level in the DOT is as follows:

LEVEL 1

Reading: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.

Writing: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

Speaking: Speak simple sentences, using normal word order, and present and past tenses.

U.S. Dept. of Labor, DOT, App. C, available at 1991 WL 688702.

11

party function report that Plaintiff "followed written and spoken instructions poorly" (Tr. at 18). Without further discussion, the ALJ then included the RFC limitation that Plaintiff "should have no requirements to read instructions [or] write reports." (Tr. at 16.) In the circumstances, there does appear to be a discrepancy between the reading requirements for jobs with a Language Development Level of 1 and the RFC in this case, which expressly includes "no requirements to read instructions." At the very least, the exclusion of reading requirements in Plaintiff's RFC suggests that she could only perform a subset of jobs with Level 1 Language Development. Neither the ALJ nor the VE recognized or addressed this conflict at step five of the sequential analysis.[7]

Moreover, as Plaintiff sets out in her Reply Brief, an additional apparent conflict exists in this case between the ALJ's finding that Plaintiff should have no requirements to "perform math calculations" and the mathematical requirements for the job of housekeeper/cleaner. In particular, Plaintiff argues as follows:

> The DOT listing for housekeeper/cleaner specifies that [it] has a Mathematical Development Level of 1. DOT § 323.687-014. The DOT defines Level 1 Mathematical Development as follows: "Add and subtract two digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as

---

[7] The Court notes that it may well be that Plaintiff retains the ability to read and write sufficient to perform all jobs at a DOT Language Development Level 1, based on past testing that showed her reading at a 5th grade level. However, the ALJ did not discuss or rely on that evidence or include any such explanation, and this Court cannot itself review the evidence, determine Plaintiff's functional abilities, and determine whether Plaintiff could then perform various job functions, particularly given the limitations included in the RFC and the lack of any further discussion or explanation by the ALJ. Those are matters that must be considered and addressed by the ALJ in the first instance. See Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (noting that this Court's "[r]eview of the ALJ's ruling is limited . . . by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency.... If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" (quoting Sec. & Exch. Common v. Chenery Corp., 332 U.S. 194, 196 (1947))).

12

> cup, pint, and quart; inch, foot, and yard; and ounce and pound. DOT, app. C, 1991 WL 688702.
>
> Because housekeeper/cleaner has a Mathematical Development Level of 1, the plain text of the DOT specifies that requires the ability to perform math calculations. This is therefore an additional apparent conflict between the DOT and the VE's testimony and the ALJ's mental RFC assessment. Under the Fourth Circuit's holding in Pearson, this is a reversible legal error that requires a remand for the ALJ to resolve.

(Pl.'s Reply Br. [Doc. #20] at 8-9.) Thus, Plaintiff contends that while the mathematical development level for the position of housekeeper/cleaner included the ability to perform basic calculations, Plaintiff's mental RFC specifically excluded these abilities. As discussed by another court considering a similar contention:

> The ALJ determined Closson's residual functional capacity included, among other things, the ability to "perform simple, routine, repetitive work with no requirements for the use of written material or mathematical calculations." R. 20 (emphasis added). The court has little difficulty agreeing with Judge Zoss that Closson's residual functional capacity, and therefore the VE's testimony that was based on Closson's residual functional capacity, conflicts with the DOT. Simply put, Closson's residual functional capacity did not meet the maximum requirements listed in the DOT for work as a dowel inspector, button reclaimer, lamp-shade assembler, and fishing-rod assembler. Whereas the GED levels for these positions included the ability to use written material and perform basic calculations, Closson's residual functional capacity specifically excluded these abilities. Therefore, the "[o]ccupational evidence provided by [the] VE" in this case, was not "generally . . . consistent with the occupational information supplied by the DOT." SSR 00-4p. This created an "apparent . . . conflict" between the VE's testimony and the DOT. Id.; see Porch v. Chater, 115 F.3d 567, 572 (8th Cir. 1997) (holding that the "VE's testimony that [the claimant] could be employed in these positions given her level of education conflicts with the DOT" because "[u]nder the DOT's classification of the jobs, neither of the positions is compatible with [the claimant's] ability").

Closson v. Astrue, No. C 06-4095-MWB, 2008 WL 504013, at *8 (N.D. Iowa Feb. 21, 2008). Notably, in Closson, the VE testified "that the type of work he identified was of the 'lowest of entry-level type activities.'" Id. at *9. Nevertheless, the VE "did not state that this meant

13

the DOT's listed maximum requirements were inappropriate guides" or "distinguish the knowledge he had compared to the information in the DOT." Id. Because the ALJ did not identify the conflict, obtain relevant VE testimony, and explain the resolution of the conflict, remand was required.

Similarly, in the present case, the VE did not explain how an individual who could perform no mathematical calculations could perform a job that expressly required that ability. Because Plaintiff had no past relevant work, no job history rebutted the presumption that at least some jobs with a Mathematical Development Level of 1 were precluded. As explained in Pearson and Thomas, an ALJ has an affirmative "duty to make an independent identification of apparent conflicts" between VE testimony and the provisions of the DOT, regardless of whether a conflict is identified by the VE. Pearson, 810 F.3d at 208-09, 210. Accordingly, it was incumbent upon the ALJ to explain the resolution of the conflict in his decision before relying on the expert's testimony. Id. at 208-211. Because the ALJ did not do so in the present case, the Court recommends remand in order for the ALJ to identify and resolve all apparent conflicts between the DOT and the VE's testimony in the first instance.

Having concluded that remand is required for further review and determination by the ALJ in the first instance, the Court need not reach the other assignments of error raised by Plaintiff, and all of those issues can be further addressed by the ALJ on remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent,

14

Defendant's Motion for Judgment on the Pleadings [Doc. #18] should be DENIED, and Plaintiff's Motion to Reverse the Judgment of the Commissioner [Doc. #16] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 24th day of August, 2021.

                                                    /s/ Joi Elizabeth Peake  
                                              United States Magistrate Judge